IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER L. WAGNER,<br><br>    Plaintiff,<br><br>  v.<br><br>DEAN FLIPPO; CAROL REED;<br>MURAT OZGUR; and<br>THE COUNTY OF MONTEREY,<br><br>    Defendants.<br>_____/ | No. C 05-02863 JSW<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS** |

Now before the Court is the motion by defendants Dean Flippo, Carol Reed, Murat Ozgur,[1] and the County of Monterey (collectively "Defendants") to dismiss plaintiff Walter L. Wagner's complaint for failure to state a claim upon which relief can be granted. The Court finds this matter suitable for disposition without oral argument. Civil L.R. 7-1(b). Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS Defendants' motion to dismiss.

**FACTUAL BACKGROUND**

Plaintiff brings a claim under 42 U.S.C. § 1983 ("Section 1983") against Defendants for their alleged wrongful prosecution of him in Monterey Superior Court for criminal contempt of a court order. (Compl. at ¶ 14.) Defendants prosecuted Plaintiff pursuant to California Penal Code § 166(a)(4), which defines contempt of court as the willful disobedience of the written terms of a

---

[1] At the time of the events complained of, Mr. Flippo, Ms. Reed, and Mr. Ozgur were members of the Monterey County District Attorney's Office. (Br. at 1.)

lawfully-issued court order and classifies the crime as a misdemeanor. (Compl. at ¶ 6.) The prosecution commenced on November 20, 2001. (Compl. at ¶ 6.) According to Defendants, Plaintiff disobeyed the terms of a 1977 permanent injunction when he made several attempts to contact Ms. Gail Morton in Monterey on November 9 and 10, 2001. (Br. at 1-2.) The permanent injunction prohibited Plaintiff from harassing Ms. Morton by telephone, in writing, or by walking, riding, or driving past her home. *Morton v. Wagner*, No. H024187, 2003 WL 21456517, at *2 (Cal. Ct. App. June 24, 2003).[2]

Plaintiff and Ms. Morton met as first-year students at McGeorge Law School. *Id.* at *1. Plaintiff pursued Ms. Morton in an erratic and persistent fashion. *Id.* He lurked in the hallway of her apartment building, jumped out of bushes at her, and delivered all manner of objects to her by placing them in and around her car. *Id.* He sought court orders to prohibit Ms. Morton from living with men over the age of 14 and to require her to read books on sexual reproduction. *Id.* He was found on campus wearing a wig and carrying a knife. *Id.* As a result of his threatening behavior, the law school provided Ms. Morton with a 24-hour security guard to protect her until she completed the bar exam in 1978. *Id.* During this period, Ms. Morton filed a lawsuit against Plaintiff for intentional infliction of emotional distress; she sought a temporary and permanent injunction to restrain Plaintiff from contacting her. *Id.* at *2. The lawsuit resulted in the 1977 injunction which Defendants used to prosecute Plaintiff. *Id.*

Plaintiff made continued attempts to contact Ms. Morton both at her work and last-known home addresses even after the 1977 permanent injunction issued. *Id.* Plaintiff kept Ms. Morton's parents' home in Santa Clara County under surveillance; he sent letters to their home. *Id.* He attended Ms. Morton's courtroom appearances and inquired about her at the Santa Clara County Superior Court. *Id.* Once in 1999, Plaintiff followed Ms. Morton out of the Santa Clara County

---

[2] Background facts regarding Plaintiff's harassment of Ms. Morton are drawn primarily from an unpublished 2003 California Court of Appeal opinion affirming the grant of an injunction against Plaintiff pursuant to California Code of Civil Procedure § 527.6. *Morton,* 2003 WL 21456517, at *1. The Section 527.6 injunction entered against Plaintiff (as distinguished from the 1977 permanent injunction at issue in this case) requires him to stay at least 100 yards away from Ms. Morton's place of work. *Id.* at *2. Section 527.6 allows a person who has been harassed to seek a temporary restraining order and an injunction prohibiting harassment. Cal. Civ. Proc. Code § 527.6. The statute was passed to provide quick relief to harassment victims threatened with great or irreparable injury. *Grant v. Clampitt,* 65 Cal. Rptr. 2d 727, 730 (Cal. Ct. App. 1997).

2

courthouse as she walked to her car. *Id.*

The events that led Defendants to prosecute Plaintiff occurred on November 9 and 10, 2001. (Compl. at ¶ 2.) On the morning of November 9, 2001, Ms. Morton appeared in the Santa Clara County courthouse on client business. *Morton,* 2003 WL 21456517, at *2. She overheard a man asking one of the bailiffs if he knew of an attorney named Gail Morton; when she looked over, she recognized Plaintiff as the inquirer. *Id.* Plaintiff later drove down to Monterey, the city where Ms. Morton resides, and appeared at Ms. Morton's parents' home. *Id.* He identified himself as "Zahaenya Wagner" and asked to contact Ms. Morton. *Id.* That evening, Plaintiff telephoned Ms. Morton's father and left a telephone number where he could be reached. (Compl. at ¶ 2; Opp. Br. at 3.) The next day, before leaving Monterey, Plaintiff left his business card at a shop adjacent to Ms. Morton's workplace, and asked the shopkeeper to deliver the card to Ms. Morton in order to make sure she received it.[3] (*Id.*)

Ms. Morton, frightened by Plaintiff's appearance in Monterey, contacted the Pacific Grove and Monterey Police Departments on November 10, 2001, and provided each with a copy of the 1977 injunction. *Morton*, 2003 WL 21456517, at *2. When she saw Plaintiff leaving the area later in the day, she notified the police of his presence. *Id.* The police arrested Plaintiff on his way to the San Francisco airport. (Opp. Br. at 4.) At the time of his arrest, Plaintiff was in possession of several knives and a list containing the names of all of Ms. Morton's coworkers. (*Id.*)

After Plaintiff's arrest, Defendants commenced a criminal prosecution against him. (Compl. at ¶ 6.) Plaintiff, in his defense, argued that the 1977 permanent injunction had been voided by a mutual release entered into by Plaintiff and Ms. Morton in 1981. (Compl. at ¶ 11; Br. at 1.) The 1981 civil action arose out of an injurious newspaper article, and in the mutual release, Ms. Morton agreed to "dismiss forthwith, with prejudice, any action pending," and "to not make derogatory, untruthful, or unfriendly remarks" about Plaintiff. (Br. at 1.) Defendants' case against Plaintiff was dismissed with prejudice on July 14, 2004 by Judge Maldonado of the Monterey County Appellate Division of the Superior Court of California. (Compl. at ¶ 7.) Judge Maldonado found that the 1977

---

[3] Plaintiff admits to the truth of the facts underlying Defendants' criminal complaint against him. (Compl. at ¶ 8.)

3

permanent injunction had been dissolved by the prior release agreement and that Plaintiff should instead have been charged under California stalker statutes. (Br. at 2.)

After Defendants' case was dismissed on appeal, Plaintiff initiated this suit, claiming that "defendants' actions of wrongful prosecution were a violation of both State and Federal Statutes . . . and in particular, defendants actions [*sic*] were a violation of Section 1983." (Compl. at ¶ 14.) Plaintiff alleges that the wrongful prosecution consisted of: filing a criminal complaint "based upon [the] wholly innocent activity of Plaintiff" (Compl. at ¶¶ 6, 10); failure to research the law (Compl. at ¶ 11); and continuing to prosecute Plaintiff after it should have been apparent that the 1977 injunction was no longer valid. (*Id.*) In response, Defendants argue that they are absolutely immune from suit for the prosecutorial conduct Plaintiff alleges violated his constitutional rights, and seek to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**ANALYSIS**

**I.   Legal Standard on a Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Thus, dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984). The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Cleggy v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

4

## II. Defendants are Absolutely Immune from Plaintiff's Section 1983 Claim.

### A. Defendants Assistant District Attorneys Flippo, Reed, and Ozgur Are Immune.

Defendants move to dismiss Plaintiff's Section 1983 claim based on the defense of absolute prosecutorial immunity from suit. (Br. at 2.) Absolute or "quasi-judicial" immunity protects a prosecutor from civil, monetary liability for injuries that arise out of the prosecutor's execution of duties that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The immunity is quasi-judicial because it protects prosecutors when they make discretionary judgments, similar to those made by a judge, on the basis of evidence presented to them. *Id.* at 423 n.20. Judges are accorded an absolute immunity for "acts committed within their judicial jurisdiction" because it serves the public interest to have judges who are at liberty to exercise their functions with independence and without fear of consequences. *Id.* at 418-19 n.13 (internal citations omitted). Similarly, in the prosecutorial context, absolute immunity: (1) allows prosecutors to "focus their energies on prosecuting rather than defending lawsuits;" (2) enables prosecutors to "exercise independent judgment in deciding which suits to bring and conducting them in court;" (3) preserves "the criminal justice system's function of determining guilt or innocence by ensuring that triers of fact are not denied relevant (although sometimes conflicting) evidence because of prosecutors' fear of suit;" and (4) ensures fairness to defendants "by enabling judges to make rulings in their favor without the subconscious knowledge that such ruling could subject the prosecutor to liability." *Id.*

Prosecutors who seek absolute immunity bear the burden of proof. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Prosecutors enjoy a presumption of qualified rather than absolute immunity. *Id.* at 268; *Imbler*, 424 U.S. at 430. Absolute immunity only applies to a prosecutor's "special functions," *i.e.* those functions closely associated with the prosecutor's duties as an advocate for the State. *Id.* The inquiry into which functions are prosecutorial and thus immune focuses on the nature of the function performed rather than the identity of the actor who performed it. *Buckley,* 509 U.S. at 269. Nor should any weight be given to prosecutorial intent in the immunity inquiry. *Ashelman v. Pope,* 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc). The issue is not the harm that the conduct may have caused, but the nature of the conduct for which immunity is

5

claimed. *Buckley,* 509 U.S. at 271. So long as the prosecutor is acting in his role as an advocate for the State, his actions are protected, even if his actions are malicious or dishonest. *Imbler,* 424 U.S. at 428.

It is well-established that a prosecutor is absolutely immune for initiating a prosecution and presenting the State's case. *Id.* at 431. In addition, a prosecutor is absolutely immune when: deciding whether or not to prosecute, *Roe v. City and County of San Francisco,* 109 F.3d 578, 583 (9th Cir. 1997); preparing and filing an information and a motion for an arrest warrant, *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997); preparing for trial, *Broam v. Bogan,* 320 F.3d 1023, 1028-29 (9th Cir. 2003); and appearing in court to argue a motion, *Burns v. Reed,* 500 U.S. 478, 492 (1991). A prosecutor's immunized duties will involve actions preliminary to the initiation of a prosecution and acts apart from the courtroom. *Imbler,* 424 U.S. at 431 n.33.

Moreover, a prosecutor is absolutely immune from claims that the prosecutor failed to investigate the accusations against a defendant before filing charges; for the knowing use of false testimony at trial; and for deciding not to preserve or turn over exculpatory material. *See Broam*, 320 F.3d at 1029-1030 (internal citations omitted) (summarizing several circuit court opinions upholding absolute prosecutorial immunity in cases where a prosecutor was sued for deliberately withholding exculpatory evidence or using perjured testimony); *see also Marlowe v. Coakley,* 404 F.2d 70, 70 (9th Cir. 1968) (holding that absolute immunity barred appellant's Section 1983 claims against district attorney and his assistants for knowingly and willfully presenting perjured testimony to a grand jury); *Atkins v. Lanning,* 556 F.2d 485, 488 (9th Cir. 1977) (holding a district attorney was absolutely immune for his failure to verify that the proper person was named in the indictment). Even though a prosecutor's decision not to preserve or turn over exculpatory material before or during trial, or after a conviction, violates a criminal defendant's due process rights, such conduct is nevertheless entitled to absolute immunity. *See id.* (citing *Brady v. Maryland*, 373 U.S. 83, 97 (1963)). "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty, but the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *Imbler*, 424 U.S. at 427.

Here, Plaintiff's complaint alleges that Defendants violated his constitutional rights when they filed a criminal complaint, failed to research the law, and continued to prosecute Plaintiff in spite of evidence that the 1977 injunction had been voided. Although Plaintiff later states in his opposition to the motion to dismiss that he was not suing "defendants for having *initiated* a prosecution," but "because . . . they continued to maintain their prosecution, even after dismissal of the action by the Monterey County judge." (Opp. Br. at 6.) The inconsistency in Plaintiff's allegations does not alter the analysis, as all of Defendants' conduct which Plaintiff alleges violated his constitutional rights, was squarely within a prosecutor's duties to initiate a prosecution and to present the State's case.

Defendants' decision to continue litigating despite adverse facts raised during the trial, and after an adverse decision from the trial court were discretionary judgments made by Defendants based on the evidence before them. Defendants' decision to prosecute Plaintiff is absolutely immune because it was essential to Defendants' execution of their duties as advocates for the State. *See Imbler*, 424 U.S. at 424 ("A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court."). Likewise, researching or failing to research the legal and factual claims raised by Plaintiff during his criminal trial were protected prosecutorial functions. *See Broam,* 320 F.3d at 1030.

Although Plaintiff in his Case Management Statement argues that Defendants were acting "beyond the scope of [their] litigation-related duties" in an investigative or administrative capacity, the facts alleged in his complaint do not support this contention. (Case Management Statement at 9.) A police officer investigating a crime or an office administrator assisting with the case would not have been responsible for filing the criminal complaint, flushing out the validity of a defense presented during a criminal trial, or for the decision to appeal an adverse trial court decision. Each of Defendants' alleged actions about which Plaintiff complains were intimately associated with the judicial process, and therefore, cannot create a basis for Section 1983 liability. *See Imbler,* 424 U.S. at 431. The Section 1983 claim against assistant district attorneys Flippo, Reed, and Ozgur is accordingly dismissed. The individual defendants are dismissed with prejudice because any further amendment would be futile. Plaintiff cannot set forth any facts that would establish Defendants'

7

liability for prosecuting Plaintiff.

### B. Plaintiff Has Failed to State a *Monell* Claim Against Defendant County of Monterey.

Plaintiff also names the County of Monterey as a defendant in the complaint caption. Absent from the complaint, however, are any specific allegations regarding how the County of Monterey deprived Plaintiff of his constitutional rights such that they could be subjected to suit under Section 1983. Although Plaintiff's Case Management Statement contains legal analysis regarding why "counties are not shielded by immunity," this section of the statement fails to contain any factual allegations pertaining to the County sufficient to withstand a motion to dismiss. (Case Management Statement at 10.)

To the extent that Plaintiff advances a theory that the County is liable pursuant to the actions of members of its District Attorney's Office, a municipality cannot be found liable under Section 1983 on a *respondeat superior* theory. *See Monell v. N.Y. Dept. of Soc. Serv.,* 436 U.S. 658, 694 (1978). Municipal liability can be imposed only for injuries inflicted pursuant to an official governmental policy or custom. *Id.* at 690-94. A county can be found liable when execution of a county policy, whether made by its lawmakers or those whose acts can be said to represent official policy or custom of the county, inflicts the injury. *Id.* at 694. While a single decision may satisfy *Monell's* municipal policy requirement, that decision must have been made by one of the municipality's authorized decisionmakers, *i.e.* by an official who "possesses final authority to establish municipal policy with respect to the challenged action." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479-81 (1986).

To hold a local government liable for an official's conduct, a plaintiff must first establish that the official (1) had final policymaking authority concerning the action alleged to have caused the particular constitutional or statutory violation at issue and (2) was the policymaker for the local governing body for purposes of the particular act. *McMillian v. Monroe County Alabama,* 520 U.S. 781, 785 (1997). The Court in *McMillian* instructed courts to look to state law to determine whether an official is the policymaker for the local government or the state for purposes of a particular act. *Id.* at 786. Applying the test set forth by the Supreme Court in *McMillian,* the Ninth Circuit has held

that in California, a district attorney acts as a state official and not a county official when he decides to proceed with a criminal prosecution. *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000). Therefore, a Section 1983 claim against the County here fails because the State, and not the County, was the actor. *See id.* at 1031. Plaintiff cannot amend his complaint to name the State as a defendant because states are not persons within the meaning of Section 1983. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989). Accordingly, Plaintiff's Section 1983 claim against the County is dismissed with prejudice.

To the extent Plaintiff alleges a state law claim against the County under the California Tort Claims Act, the Court declines to exercise supplemental jurisdiction over this claim in the absence of a federal question claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss with prejudice. The Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: November 8, 2005

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE